We have one other case for oral argument this morning. In that case, I think both counsel are appearing by Zoom. Why don't we first make sure we can hear both counsel. Go ahead and turn your microphone on real quick. Alice for the petitioner. Perfect. I can hear you and we'll hear from the government's counsel. Ashley Arthur for the respondent. All right. So we can hear from both of you. So petitioner's counsel will go first. You have 15 minutes. Go ahead and state your name again for the record and then let us know how much time you plan to reserve for rebuttal. Thank you. You may proceed. I'll say five minutes for the rebuttal. For asylum and statutory withholding, this case turns on nexus. And the petitioner here argues that the military, that he was persecuted by the military because he was an anglophone, which he imputed political opinion. Whether he suffered past persecution is a question of law for this court to decide. However, he testified that he was beaten with a machete, causing him to bleed profusely and that the beating left scars on his chest. And this is in on pages 105 through 111. The immigration judge minimized the petitioner's harm throughout his findings, causing the BIA and the respondent's brief to do the same thing. And we can see examples of this on pages 63 through 64. The result is a misstatement of the record, especially concerning the person concerning persecution and torture. And here regarding asylum, the BIA found no clear error that the military's motive was an investigation. But the petitioner disagrees. Based on his nationality, the United Nations, the UNHCR handbook, paragraph 75 is instructive in that it discusses situations where one state has multi-ethnic groups or linguistic groups coexisting within that one state and the persecution that can arise out of situations like that. Do you mind my asking, what evidence is there that the government, when it detained Mr. Osonga Cap, was doing so on the basis of nationality or his anglophone status? If we consider the country condition reports, especially the Department of State Human Rights Report 2019, and I believe I've cited a couple of pages here. And I understand those country conditions reports speak generally to the conflict that's ensuing, but specifically to petitioner, is there anything in the record that suggests they were aware of his nationality or had imputed some sort of political opinion to him? He was an anglophone and the country condition reports speak at how the military was killing civilians and burning villages. And just by the fact that he was an anglophone qualifies as an example of nationality. Did they know he was an anglophone? Yes, they knew he was an anglophone because he spoke English. And people in Cameroon, they can tell the difference. And even if he were to speak French, which he did not, he spoke pidgin English. It was very clear that he was an anglophone. Well, can I follow up on that? I think what I'm curious about is a very similar question, which is, what is there in the record that's individualized evidence as to Mr. Assange Cap that they actually were acting from some either race-based motive or something like that? And let me make sure that you understand what I'm asking. If we had country conditions report that said that there was a certain, you know, there was a lot of mistreatment of people of, say, certain religion, right, say a certain religion. And then the police pick somebody up, but it seemed like they had a legitimate investigatory basis for picking them up. I'm not sure you're even arguing here that they didn't have an investigatory basis, but you're saying, but they also had this other basis, sort of a mixed motive. Correct. But if all you're pointing to is evidence in the country conditions report, to go back to my a religious bias, I mean, how would that not mean that every time somebody gets picked up for legitimate investigatory reason, I think under your argument, we'd just be assuming that they also were picking them up for religious discriminatory reasons. Wouldn't we need to see something in the record that was individual to that person? Well, in terms of just the nationality, it's a little more generalized, and I agree with that. But it seems if one takes a closer look at the country condition reports, it almost borderlines that the military was engaging in ethnic cleansing against the Anglophones. And it was very clear that the petitioner was an Anglophone. And so that would be persecution based on his nationality. But we also have, and I think the stronger case to be made is the imputed political opinion. Because I think in- Is this by the government, or just to be clear, is this by the government or by the Amba Boys? By the government. Our entire case, the petitioner's case, focuses on his treatment with the military. But, well, the petitioner also maintains that the separatists were not a criminal organization, that they were actually an anti-government group fighting for independence. But you were, I'm sorry, I just wanted to make clear, you're saying that an imputed political opinion that the government was imputing to Assange Camp. What's the evidence of that? The evidence is that they treated him more like a suspect than a victim who had been kidnapped. They arrested him, and they persecuted him. They beat him with a machete. That's not really how you treat a victim that you're asking their help for. It's more that they are imputing an opinion on him that he either belonged to the separatists or he supported them. Even the immigration judge hints to that a little bit on, let me just see here, on pages 67 and also on 139. He says that although he was treated in a way to determine whether he was involved with the separatists, this still doesn't undermine that this was an investigation. But we differ. We disagree with that this was an investigation. We feel that the case with Singh B. Ilkert, which I'm not pronouncing right, from the 90s is really instructive here because it seems to fit the situation in the petitioner's case where the court found that when an investigation no longer qualifies as an investigation if the person is treated so harshly that it actually supports a finding that is political suppression. If there's no evidence that they had a legitimate prosecutorial purpose which here the petitioner had committed no crime, there was no prosecutorial purpose, that there arises a presumption that the motive is political. Is your position that the government didn't have a legitimate investigatory purpose here? I thought your position was yes, they were investigating, but they were also motivated by animus based on nationality. They were motivated by animus because he was an anglophone, but if we were to say that this was an investigation, it didn't qualify as an investigation because of the way they treated him. An inference or a presumption arises that they thought that he either supported the separatists or he belonged to them. In fact, the immigration judge alludes to this that no ransom was paid, that they might have imputed this on him. We've got you down to four minutes, but I don't know if either of my colleagues have any further questions, but I think you wanted to reserve five. We've taken you to four. I'll close here. We'll hear from the government. Good morning, your honors. May it please the court. I'm Ashley Arthur on behalf of the attorney general of the United States. The petition for review should be denied because the substantial evidence supports the agency's denial of asylum and upholding a removal for a lack of nexus. Additionally, petitioner failed to submit any evidence compelling the conclusion that he had been tortured upon return to Cameroon. As petitioner concedes, this case turns on nexus with regard to the asylum and upholding claim. Petitioner failed to establish nexus for two reasons. First, petitioner failed to establish the authorities are politically motivated or looking to harm him based on political opinion or nationality, and two, he failed to prove that the Amba boys targeted him on the basis of an imputed political opinion. I'll address the petitioner relies very much so on the Ilchert case, which does acknowledge that the burden rests on petitioner to establish that there was an illegitimate investigation. Petitioner points to no charges being brought against him, but this court has never held that the presumption is automatically triggered if the police do not charge someone with a crime. Mr. Arthur, can I interrupt you? I'm sorry to interrupt, but can it be considered a legitimate investigation if a person who, as I understand it, there was no criminal investigation against Mr. Asanga Kap, was there? He currently testified that he was merely a kidnap victim, but this court has never held that an investigation to be legitimate can only involve suspects of a crime. This court acknowledges that witnesses are a part of an investigation, and here, petitioner did state that he didn't cooperate with authorities initially. He had to be pointed out by someone else. This is going to be my question. Even let's say that he was a witness, a witness who's detained for 13 hours, who sustains injuries that he alleges, you know, being cut by machete, beaten. Can it be considered a legitimate investigation to have put someone through that situation? I guess my question is, is this a mixed motive case if there's reason to question the investigation itself? Yes, your honor. This is not a mixed motive case because no nexus to protected ground was established. Being innocent doesn't provide immunity from a police investigation, and this and I'm quoting, where there is evidence of legitimate investigatorial purpose, foreign authorities have much latitude and vigorously enforcing their laws, and they're entitled to being skeptical and probing for evidence, and while it may be unsavory practice to the standards of the United States, it is clear that the authorities were interested in the petitioner because they were trying to get to the bottom of this kidnapping case, and he did not testify to any slurs or any mention of his political beliefs or nationality by the authorities when they detained him. He did state that he initially didn't cooperate with the authorities. He also ran and hid the second time that he saw the authorities and subsequent interactions. His family was not physically harmed by authorities, and Ming Dai, the 2021 Supreme Court case does explain that credibility does not guarantee a favorable outcome to the applicant. As I understand, as I understand Singh versus Garland and the other investigation cases, those were, I guess you could term them prosecutorial investigations or law enforcement related ones. Is this within that same scope of calling something an investigation? I don't understand that this is a law enforcement purpose, was there? A law enforcement purpose is even described in the news article petitioner evidence that describes the police actively looking for the kidnapped people, and the Ilchart case as well as the Gonzalez case, because they're both seat cases involving very similar facts, they're distinguishable here because the context of those cases is there was a record that demonstrated authorities abused an anti-terrorism law as an excuse to harass political descendants, and here there is no indication that the authorities were using the kidnapping investigation to harass petitioner because he is an anglophone or any imputed political opinion. So here it was reasonable for the agency to accept a story that he was mistreated by authorities, but there was no need to infer that this mistreatment was on an account of a protected ground. He never provided any evidence that the authorities mentioned anything about his political beliefs. His own news article mentions that they were using a helicopter to help locate the abductees, and his mother and uncle's affidavits don't provide illumination on the nexus issue, and nexus is dispositive of the asylum and withholding claims. He also states in his reply that he doesn't support the separatists who's playing undermine why the police would impute a political opinion onto him when he was doing exactly the opposite of what the separatists wanted. So I guess I take it, you know, your argument would be that even if some might view this detention as imputing that he might be a part of the separatists that the evidence doesn't compel that conclusion to overcome the agency's finding. Yes, your honor, and as for this nationality claim argument that petitioner asserts, there's no evidence that the government views anglophones as a different nationality. In fact, they're trying to keep the country together, and the examples petitioner lists in her reply brief, those are not conflicts that boil down to linguistic differences. Those are conflicts that are rooted in territorial disputes, and there's just no nexus here that's been established and that was burdened without evidence to suggest that the authorities are motivated by anything other than trying to get to the bottom of this kidnapping. He fails to link the harm he experienced while detained to a protected ground. Okay, counsel, can I ask you kind of a follow-up related to what Sanchez has been asking? You know, if there's, say, a terrorist, some terrorist event has happened, a politically motivated terrorist event, and you're trying to investigate that as a government, and you find out you think these people will have information about that, and you start trying to contact them and get information from them, but they're resisting your attempts to do that, then it seems to me to be just sort of common sense and very natural for the government at that point to think, well, maybe these people are actually in cahoots with the with the terrorists, right? Because that, you know, why else are they resisting our... And so in some ways, I think that's what the petitioner's argument here is, is that the government thought that I was supporting the Amba Boys because I was not being responsive, and it seems to be some truth to that, but I guess the question I've got is, when the government's investigating, it also seems to me it's also got to be true here that the government had a legitimate just investigatory purpose. So when the government's investigating something, and the person's acting in a way that would would lead the ordinary person to think, observing it, to think, well, that person might be might be helping the people we're investigating, does that, does that then change it to where now the government would be, you know, now it's a political, imputing a political motive or political beliefs to the person to where, you know, now you'd have a PSG? Or at what point does it does it cross that line? I guess is what I'm trying to figure out. Does it, do you see the question I've got? Yes, Your Honor. First, political social groups are not an issue here. It's just the political opinion claim, which is separate from a political social group claim. So here, the part of the nexus analysis is, one, do the alleged persecutors, are they aware of this political opinion? And two, do they care? And here, there's no evidence that they care. And Your Honor may be alluding to the Dinu case, if this is what you're alluding to, because there, the petitioner was found credible, he credibly testified that he was innocent of a crime, he was harshly treated by police, and the Ninth Circuit nevertheless upheld that, given the wide latitude that foreign governments are given in investigating crimes, this was not a politically motivated prosecution or investigation. And this thing, the Gonzalez case, cites Dinu for that. And here, there is no evidence that the authorities cared. In fact, the authorities, by his own evidence in the news article, apparently were actively helping search for the missing students when they were abducted, expending resources, such as using a helicopter. It sounds like initially, I mean, I had to try to figure out what's going on here from the stories. Initially, the authorities are trying to get these students back, they get returned, and then the authorities want to go talk to them, which I think seems natural enough. But then at the point where the students are all avoiding talking to the authorities, it would just seem natural to me that the authorities would start to be like, well, why are the students avoiding us? Are they somehow involved with these folks? And I guess what I'm getting at is the mere fact that any reasonable, intelligent person would probably start to question, well, maybe those folks have some relationship. Does that give rise to an imputed political opinion? If it's still the case that they have a strong, legitimate investigatory purpose, it sounds like the case you were just relying on basically made it sound like as long as you have a strong investigatory purpose, the fact that you might also think the witnesses you were interviewing might be politically sympathizers with the people you're investigating doesn't necessarily give them a basis for asylum. Is that your argument? There's no evidence here that the authorities were using this kidnapping investigation for any reason because they personally disagreed with separatists. The news article doesn't suggest any illegitimate purpose on part of the authorities. It's a crime to kidnap and demand ransom, and it was Petitioner's burden ultimately to show that this is why they were targeting me. And it would be very strange to assume because the kidnapping involves separatists that the government's motive must be politically motivated when the authorities, their job is to investigate crimes. Except for the fact that a supposed kidnapping victim is then detained by the government for 13 hours and mistreated themselves. That's, I guess, that's the only pause that I have about this case in the sense that, you know, and it seems as if the record also indicated that the AMBA boys were also returning to their homes and terrorizing families about not cooperating with the government. So, I take Petitioner's point that they could very well have been caught in the middle and there may be reasons to not necessarily want to fully go along with the government's investigation, if you want to call it that. But ultimately, it seems to me as if the evidence is more equivocal on both ends and not something that is compelled to overcome the agency's own determination. Yes, Your Honor. It really just boils down to whether he established that the regard to his political opinion at all. I mean, he was a victim and he admitted that he didn't cooperate with authorities and then he admitted to running and hiding the second time they came around. And this is a serious crime and the authorities had a clear interest in the Petitioner. And as for the harm that Petitioner underscores in their argument, one, whether the harm rises to persecution is not an issue that would have to be remanded because here the only issue is nexus. And he didn't put forth the evidence that was persuasive enough, whether he was credible or not, that got him to meeting his burden. And therefore, the agency reasonably concluded that there was no nexus to a protected ground with regard to the authorities. He can reasonably and genuinely believe that he was targeted on a protected ground, but that doesn't necessarily make it so. And he didn't have enough evidence to get him there. Okay, well, I think let me ask if my colleagues have any further questions. We've taken a little bit over. I thank the government and we'll go back to Petitioner's counsel. So my turn. The Petitioner disagrees that he and his family were not harmed after he was released because in the mother's affidavit, which is on, in the mother's affidavit, she talks about how depressed he got, how he was living in I'm not sure that you just, is it in some ways harm is sort of irrelevant as this case stands before us because the BIA decided this case on nexus. And so if we were to disagree with it on the nexus issue, we would send it back for them to decide whether or not, decide whether the harm risk rose to persecution level, et cetera. Is that right? Okay. So I think the key issue for us is whether or not, like your political, imputed political opinion argument. Well, we would just close by saying that it's a very close call whether the military actually suspected him of being a separatist or supporting the separatists. They generally had a lot of towards anglophones. But even if it was an investigation, their treatment of him, they treated him as if he was a supporter of the separatists. And they did impute that. So we can, the presumption was raised that they imputed an opinion on him. Yeah, we would close with that. Any other questions? All right. Well, thank you, counsel. Thank you to both sides for your helpful arguments. And that finishes our day for today. And we will go back and conference, and then we'll come back out here and talk to the law students if we've got any energy left after all of that. All rise.
judges: VANDYKE, SANCHEZ, Vratil